## CARLISLE AND GRAGGS v. GRAY.

1. The act of 1819, which prescribes the rate of interest and prohibits the taking of usury, impliedly abrogates the common law, which allowed the borrower to recover back in *indebitatus assumpsit* all interest he had paid above the rate prescribed: since the passage of statute, he can only maintain a *qui tam* action in such case, and then the amount recovered by him " shall be paid into the treasury for the use of the State."

Writ of Error to the Circuit Court of Chambers.

THIS was an action of assumpsit, at the suit of the plaintiffs in error against the defendant, for money had and receiv-

ed; for money paid, laid out and expended; for money paid by plaintiff to the defendant, by mistake, in a settlement previously had between them; and upon an account stated. The cause was tried upon the general issue, and the jury returned a special verdict, in which the following facts are found: 1st. That Elizabeth C. Gray held notes on the plaintiffs amounting, in February, 1843, to $1326 85, the whole of which were given for excess over legal interest for the forbearance of another demand, which she then held against them. 2d. That in said month of February, 1843, one Gunn, a witness, purchased said notes from Mrs. E. C. Gray, and paid her for them, and another demand against the same parties, a tract of land, estimated at three thousand and seven dollars. 3d. That some three days after the said trade (at which time the notes went into the possession of Gunn,) Gunn gave the notes up to the plaintiffs, upon their executing to him their joint note, with security for the amount; which is still wholly unpaid. 4th. That before the trade between Mrs. Gray and Gunn, Carlisle and Graggs had jointly requested Gunn to trade for the notes, and they agreed with him that they would not plead usury against him, but that they would give him such note as they afterwards did give. Gunn made the trade upon this assurance by Carlisle and Graggs. 5th. That Gunn paid for said notes with a tract of land, then and previously his own property, and to which Carlisle and Graggs had no claim. And the question being submitted to the jury whether the trade between Gunn and Mrs. Gray was a purchase by him of the notes from her, or a payment to her of the debt of Carlisle and Graggs, they find that it was a purchase by Gunn on his own account, and if the law be for the plaintiffs, assess their damages at $1462 48. Thereupon a judgment. was rendered for the defendant, and against the plaintiffs for costs.

T. D. CLARKE, for the plaintiffs in error, insisted that the action was well brought, and that the special verdict affirmed such a state of facts as entitled the plaintiffs to a judgment. He cited 1 Porter's Rep. 423; 20 Johns. Rep. 290; 8 Cow. Rep. 681; 7 Wend. Rep. 256; 3 Ala. Rep. 158, 474, 643.

Carlisle and Craggs v. Gray.

L. B. ROBERTSON, for the defendant, cited 7 Term. Rep. 184; 9 Mass. Rep. 48; 6 Greenl. Rep. 39; 5 B. Monr. Rep. 317; 1 Pick. Rep. 554; 1 Lomax' Dig. 373.

COLLIER, C. J.—Where a higher rate of interest than eight per cent. shall be taken or received, under any contract, the act of 1819 declares, that there shall be a forfeiture of the entire debt, &c. with all interest thereon, " one half of which forfeiture shall be paid into the public treasury, for the use of the State, and the other half to him or them that will inform or sue for the same, to be recovered with costs, by action of debt, in any court of record in this State: *Provided*, that if the borrower should be the informer as aforesaid, the whole amount thus recovered shall be paid into the treasury, for the use of the State. *Provided, also*, that every such action of debt as aforesaid shall be commenced and sued in the lender's life-time, or within three years after the commission of the offence, or in one year after the time. of payment of any money, goods, wares or merchandize contracted to be paid on any usurious agreement or contract." [Clay's Dig. 589, § 2.] This enactment has been so far modified by the act of 1834, as to make the interest only the forfeit, where a higher rate than the law authorizes is taken or received; but in other respects it remains in full force. [Clay's Dig. 591, § 9.]

It may be conceded, that according to the principles of the common law, the borrower of money, who has paid an excess above the legal rate of interest, may recover it in an action of *indebitatus assumpsit; and further*, that a statute in imposing a penalty, or forfeiture, and providing a specific remedy for its recovery, does not abolish the common law action which was previously appropriate to the case. But is it allowable to adopt the latter form of procedure so long as the party is liable to the action prescribed by the statute. The case of Wheaton v. Hibbard, 20 Johns. Rep. 290, is most explicit, and furnishes a negative answer to this question. Here we have seen that the limitation to the *qui tam* action cannot be less than one year from the time of the reception of the usurious interest, unless the lender shall sooner die. If the writ may be compared with the special verdict, we discover that the present action was instituted within two

months after defendant sold the notes she held on the plain-tiffs, to Gunn, and within less than that time after they were extinguished by the arrangement between the plaintiffs and the latter.

But does not the first *proviso* to the section of the act of 1819, which we have quoted, indicate the intention of the legislature that the borrower who had parted with his money should not be reimbursed the excessive interest? While it allows him to maintain the form of action which the statute designates, it declares that he shall not profit by the recove-ry, but in such a case makes the State the sole beneficiary of the judgment. This proviso, it is true, does not repeal the common law right of action, *in totidem verbis*, but (it is con-ceived) indicates the intention of the legislature, that the bor-rower shall not maintain any action for its reimbursement. If he were allowed to sue in assumpsit after the *qui tam* suit were barred, this intention would be defeated. ' To prevent such a result, we think it must be held, that the action in the present case is not maintainable. This view is decisive, and we decline the consideration of the points raised at the ar-gument. The judgment of the circuit court is consequently affirmed.