(134 So. 471)

## McCORMICK v. FALLIER et al.
### 3 Div. 928.

Supreme Court of Alabama.
March 26, 1931.

Rehearing Denied May 21, 1931.

Hill, Hill, Whiting, Thomas & Rives, of Montgomery, for appellant.

Carter & Pickett, of Montgomery, for appellees.

BROWN, J. (after stating the case).

The first assignment of error is predicated on the court's ruling on the demurrer, going to the equity of the bill. If the bill is without equity, the other assignments of error are not important.

It is well settled, as a general rule, that a court of equity, at the instance of the maker who has a good defense thereto in the hands of the payee, will enjoin the transfer of negotiable notes or other negotiable instruments, if the effect of such transfer is to cut off or destroy such defense, and on proper showing the court will order the instrument delivered up to the maker or cancel the same. 32 C. J. 152, § 202; Oden v. King, 216 Ala. 504, 113 So. 609, 54 A. L. R. 1413.

So the question to be decided is whether or not the defense of usury is available to the maker, in the hands of a purchaser for value, in due course, without notice. If so, the complainants have an adequate remedy at law.

The statute provides that: "All contracts for the payment of interest upon the loan or forbearance of goods, money, things in action, or upon any contract whatever, at a higher rate than is prescribed in this chapter, are usurious, *and cannot be enforced either at law or in equity*, except as to the principal. Nor shall the borrower of money at a usurious rate of interest *ever in any case in law or equity be required to pay more than the principal sum borrowed*, and if any interest has been paid the same must be deducted from the principal and judgment rendered for the balance only." Code of 1923, § 8567. (Italics supplied.)

Before its amendment by the Act of March 9, 1901 (Acts 1900–01, p. 2685), the statute was applied in Barclift v. Fields, 145 Ala. 264, 41 So. 84, 85, where it was said: "The contract stipulating for a greater rate of interest than eight per cent. was tainted with an evil and wrongful intent. Hawkins v. Pearson, 96 Ala. 369, 11 So. 304. There was no contractual right to recover any interest, and that was so because the contract, to the extent of all interest, was offensive to the policy and positive mandate of the law." And in Jones v. Meriwether, 203 Ala. 155, 82 So. 185: "Our statute does not make usurious instruments void *except as to the interest*, but, of course, where usurious interest has been paid, the debtor could upon proper and timely application, have it applied to the principal." (Italics supplied.)

Some of the cases decided before the last amendment of the statute heretofore noted hold that usurious contracts are not void, but voidable as to the interest, but they all agree that the courts will not compel the borrower to pay usurious interest, by proceedings at law or in equity; nor will courts of equity require the payment of legal interest as a predicate to relief from usurious contracts. Gross v. Coffey, 111 Ala. 468, 20 So. 428; Cooledge v. Collum, 211 Ala. 203, 100 So. 143; Barclift v. Fields, supra; First National Bank of Abbeville v. Clark, 161 Ala. 497, 49 So. 807.

And in Blue v. First National Bank of Elba, 200 Ala. 129, 131, 75 So. 577: "It is familiar law that, if the original debt in fact persists and was usurious in its inception, the taint abides in it, and will affect it throughout all its renewals and mutations, and follow it into whose hands soever it may come, *unless the holder receives it through* the fraud of the debtor." (Italics supplied.)

And in Pearson et al. v. Bailey, 23 Ala. 542: "Neither does the renewal of the note, or change of the form of the contract, alter the character of the original transaction. Jackson v. Jones, 13 Ala. 121. If it is usurious in its inception, the taint abides in it, and will affect it throughout all its renewals and mutations, and follow it into whose hands soever it may go, *unless the holder receives it through the fraud of the maker*." (Italics supplied.)

In Masterson v. Grubbs, 70 Ala. 406, 408: "The illegal taint can be purged or eliminated, however, in either of two ways: *first*, by a renewal of the note or contract, *after it has passed into the hands of a bona fide purchaser for value, without notice of the usury; secondly*, by a reformation of the contract, by

which the *usurious interest is expunged* by remitting the excess, and only lawful interest is retained or exacted." (Italics supplied.) See, also, to the same effect, Lewis v. Hickman, 200 Ala. 672, 77 So. 46.

In Saltmarsh v. Tuthill, 13 Ala. 390, it was held that an innocent purchaser of a bill of exchange—negotiable under the law merchant—was not protected from the defense of usury.

To quote from the opinion of the court in Saltmarsh v. Planters' & Merchants' Bank, 14 Ala. 668, 680: "In Cameron v. Johnson & Nall, 3 Ala. 158, it is held, the change of the statute which avoids the note or bill, as to the interest merely, makes such change in the character of the contract, as to authorize an innocent purchaser of it to recover the amount advanced by him. Our present statute avoids the note or bill, only as to all but the principal sum. Digest, 591, § 9. It is clear, in the present case, that Wilson could have recovered from the acceptors only the $5000 advanced by him by reason of the usury, having received the bill from them at the rate of 20 per cent. discount; and by the well settled law, the statute avoiding the bill as to all but the principal sum, as between the original parties, the bill is void to the same extent in whose soever hands it may afterwards go. It is, however, unnecessary to elaborate this point, as having had occasion to examine the question of usury, at considerable length, in the case of Saltmarsh v. Tuthill, at the last term of this court, it is unnecessary further to notice it here." 14 Ala. 680.

In Hanrick v. Andrews, 9 Port. 9, 37, a case arising under and governed by the laws of the state of New York, the court, after quoting from a decision of the New York Court (Hockley v. Sprague), reported in 10 Wend. 113, applying the usury statutes of that state, further observed: "Thus, we discover that it is incumbent upon an indorsee, if he would prevent usury from being set up against him, to show that he became the *innocent holder of the paper, for a valuable consideration, before its maturity.* Nothing of this kind seems to have been shown or attempted by the defendant in error." (Italics supplied.) From these expressions it appears that this utterance was not only dictum, but it was in respect to the laws of New York, and is not in conflict with the utterance of this court in the cases heretofore referred to.

In Sewell v. Nolen Bank et al., 204 Ala. 93, 85 So. 375, it was assumed that the defense of usury was not available against an innocent purchaser without notice, but the court held that the alleged purchaser for value before maturity, without notice, failed to sustain the defense by the proof.

The rule established by the cases decided before the last amendment of the statute is that a negotiable paper in the hands of a holder in due course, who acquired it for value and before maturity, without notice, is subject to the defense of usury to the extent of restricting the amount of the recovery to the sum actually paid by such holder, and the question is, Has the subsequent amendment of the statute changed the rule so as to limit the recovery to the principal sum, in every case?

From the Historical Statement, 27 R. C. L. 203, § 1, we take the following as shedding light on the purpose of the statute: "There is no people, known to history, with any considerable financial or commercial structure, that has not had laws against usury. It has always been recognized that in the power of the lender to relieve the wants of the borrower lies the germ of oppression. This view, carried to its extreme, and finding support in the now discredited economic theory that money, being barren, cannot beget money, at one time led to the prohibition of all interest. The doctrine that any interest is usurious was never adopted in this country. On the contrary, by the common law as here adopted no rate of interest is illegal, in the absence of statutory enactment, unless so great as to be unconscionable, and at the present time usury must be regarded merely as malum prohibitum, not malum in se. It rests wholly in statute."

It is a matter of history that the statute on this subject has been repeatedly amended to meet decisions of this court, making a liberal application in favor of the lender, and, in its present form, it prohibits the enforcement of usurious contracts, as to the interest, and in emphatic language declares: *"Nor shall the borrower of money at a usurious rate of interest ever in any case in law or equity be required to pay more than the principal sum borrowed,* and if any interest has been paid the same must be deducted from the principal and judgment rendered for the balance only." (Italics supplied.) Code 1923, § 8567.

While this statute does not in terms declare that such usurious contracts are void as to the interest, by necessary implication it does, and to that extent it is void ab initio.

Daniel on Negotiable Instruments, vol. 1, p. 959, § 806, says: "There are some defenses which are as available against a bona fide holder for value, and without notice, as against any other party. They are those which go to show that the instrument was absolutely and utterly void, and not merely voidable, (1) by reason of the incapacity of the party assuming to contract; or, (2) by reason of some positive interdiction of law; or, (3) by reason of the want of consent of the party sought to be bound to the particular contract." Fraud in the factum, Bran-

nan's Negotiable Instruments Law (4th Ed.) p. 436, § 55, subsec. 3.

What inhibition could be more positive than *"Nor shall the borrower of money at a usurious rate of interest ever, in any case in law or equity be required to pay more than the principal sum borrowed."* Section 8567, Code. (Italics supplied.)

■ The Negotiable Instruments Law was adopted into the Code along with section 8567 (Code of 1923) as a part of the system of general laws of the state, and there is no basis for holding, as some courts have done, that the laws against usury are repealed by the Negotiable Instruments Law, section 57 of which provides: "A holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves and may enforce payment of the instrument for the full amount thereof against all parties liable thereon." Code 1923, § 9083.

Dr. Brannan, "Professor of Law Emeritus, Harvard University," treating this subject, has this to say (Brannan's Negotiable Instruments Law, pp. 440, 441, § 55, subsection 4):

"It has sometimes been held that illegality ceases to be a real defense under the N. I. L. unless made so by a subsequent statute, and that the statutes previously in force declaring void instruments given for gaming or upon usurious interest or other forbidden transactions are impliedly repealed by the N. I. L. Wirt v. Stubblefield, 17 App. D. C. 283; Wolford v. Martinez, 28 N. M. 622, 216 P. 499 (gaming). Wood v. Babbitt [C. C.] 149 F. 818, 822 (usury), semble.

"The great weight of authority, however, is contra. Perry Savings Bank v. Fitzgerald, 167 Iowa, 446, 149 N. W. 497 (usury); Plank v. Swift, 187 Iowa, 293, 174 N. W. 236, 8 A. L. R. 309, with note (gaming); Alexander v. Hazelrigg, 123 Ky. 677, 97 S. W. 353, 29 Ky. Law Rep. 1212 (gaming); Holzbog v. Bakrow, 156 Ky. 161, 160 S. W. 792, 50 L. R. A. (N. S.) 1023; semble, S. C. infra, p. 441; Lawson v. First Nat. Bank (Ky.) 102 S. W. 324, 31 Ky. Law Rep. 318, holding that a statute making void a peddler's note unless indorsed with the words 'Peddler's note,' is not repealed by implication by the N. I. L.; McAfee v. Mercer Nat. Bank (Ky.) 104 S. W. 287, 31 Ky. Law Rep. 863, accord (cf., Arnd v. Sjoblom [131 Wis. 642, 111 N. W. 666, 10 L. R. A. (N. S.) 842, 11 Ann. Cas. 1179] infra, sec. 57); Levy v. [Doerhoefer's Ex'r] Fidelity & Columbia T., 188 Ky. 413, 222 S. W. 515, 11 A. L. R. 207 (gaming), noted in 30 Yale L. J. 191; Elkin Henson Grain Co. v. White, 134 Miss. 203, 98 So. 531 (note given for purchase of intoxicating liquor); Fisher v. Brehm [100 N. J. Law, 341], 126 A. 444, 37 A. L. R. 695, with note (gaming); Sabine v. Paine, 223 N. Y. 401, 119

N. E. 849, 5 A. L. R. 1444, affirming 166 App. Div. 9, 151 N. Y. S. 735, S. C. secs. 29, 57, 66 (usury) notes in 4 Corn. L. Q. 44; Kennedy v. Heyman, 183 App. Div. 421, 170 N. Y. S. 828, S. C. secs. 29, 57; Crusins v. Siegman, 81 Misc. Rep. 367, 142 N. Y. S. 348 (usury); Larschen v. Lantzes, 115 Misc. Rep. 616, 189 N. Y. S. 137 (gaming), noted in 70 U. Pa. L. Rev. 52; Fleischer v. Wolf [Sup.] 191 N. Y. S. 691 (gaming); Martin v. Hess, 23 Pa. Dist. Ct. 195, 71 Legal Intelligencer, 148 (gaming); Hamilton-Turner Grocery Co. v. Hander (Tex. Civ. App.) 253 S. W. 833, S. C. sec. 56; Raleigh County Bank v. Poteet, 74 W. Va. 511, 82 S. E. 332, Ann. Cas. 1917B, 359, L. R. A. 1915B, 928 (stipulation for attorney's fees in note), S. C. sec. 2–5, semble; Twentieth Street Bk. v. Jacobs, 74 W. Va. 525, 82 S. E. 320, Ann. Cas. 1917D, 695 (gaming); Eskridge v. Thomas, 79 W. Va. 322, 91 S. E. 7, L. R. A. 1918C, 769 (usury); In re Valecia Condensed Milk Co. [D. C.] 233 F. 173 (bonds made void by statute).

"It is submitted that the weight of authority and the better reasoning is in favor of the view that the Negotiable Instruments Law does not impliedly repeal statutes which expressly or by necessary implication declare an instrument void. Sections 55 and 57 are those chiefly relied upon in favor of the contrary view, but they do not seem to compel this conclusion. If an instrument is made void by statute, then it is as if there were no instrument at all, and, as was said in the case of Martin v. Hess, supra, where section 57 was relied upon by counsel for the plaintiff, 'that this act was not intended to inject life into a written instrument that by law was null and void ab initio is apparent from the use of the word "liable" in section 57 in this act. * * * The liability is defined to be the state of one who is bound in law and justice to do something which may be enforced by action; Bouvier, p. 206. The maker of a note given in payment of a gambling transaction is not liable on such instrument, as by law such an instrument is null and void and of no effect.' "

The language of the statute of the state of Iowa, construed and applied in Perry Savings Bank v. Fitzgerald, 167 Iowa, 446, 149 N. W. 497, cited in support of the text, is not so strong as is the quoted provision of our statute. The Iowa statute (Code 1897, § 3041) provides: "If it shall be ascertained in any action brought on any contract that a rate of interest has been contracted for, directly or indirectly, in money or in property, greater than is authorized by this chapter; * * * and in no case where unlawful interest is contracted for shall the plaintiff have *judgment for more than the principal sum*, whether the unlawful interest be incorporated with the principal or not." (Italics supplied.) In that case it was held that the provisions of section

57 of the Negotiable Instruments Law (section 9083 of the Code) were ineffective to save the holder in due course from the defense of usury.

In Gross v. Coffey, 111 Ala. 468, 20 So. 428, decided November term, 1895, applying the statute of that time (Code 1886, § 1754), which provided: "All contracts for the payment of interest upon the loan or forbearance of goods, money, things in action, or upon any contract whatever, at a higher rate than is prescribed in this chapter, are usurious and cannot be enforced, except as to the principal; and if any interest has been paid, the same must be deducted from the principal, and judgment rendered for the balance only," it was held that usurious contracts were not void, but voidable only, as to the interest, and, if the contract became fully executed by payment of the principal and the usurious interest, an action would not lie to recover the usurious interest.

That case (Gross v. Coffey, supra) was incidentally referred to in Cooledge et al. v. Collum, 211 Ala. 203, 100 So. 143, 144, where the observation was made; "Contracts for the payment of interest upon the loan of money at a higher rate than 8 per cent. per annum are usurious and cannot be enforced, except as to the principal under our statute. Sections 4623 and 4619, Code 1907. The contracts are not invalid and void, but voidable as to the usurious interest and valid and legal as to the principal; and usurious interest paid on such contracts cannot be recovered in an action of assumpsit, without an express promise to repay it. Code sections supra; Gross v. Coffey, 111 Ala. 468, 20 So. 428." The court then proceeded to discuss and apply the statute applicable to the case in hand. Acts 1900-01, p. 2685.

The provision of the statute added by amendment after the decision in Gross v. Coffey, supra, was, to wit: "*Nor shall the borrower of money at a usurious rate of interest ever in any case in law or equity be required to pay more than the principal sum borrowed.*" (Italics supplied.) Section 8567, Code.

This amendment and the authoritative holding in Jones v. Meriwether, 203 Ala. 155, 82 So. 185, that usurious contracts were void as to the interest, were not noticed in Cooledge et al. v. Collum, 211 Ala. 203, 100 So. 143.

█ The conclusion is inescapable that the statute, by necessary implication, renders contracts made in borrowing money, where usurious interest is contracted for, void ad initio, as to the interest, and no legal liability to pay interest arises from the execution of such contract. To hold otherwise, would be to disregard the positive mandate of the statute, "Nor shall the borrower of money at a usurious rate of interest *ever in any case* in law or equity be required to pay more than the principal sum borrowed." (Italics supplied.)

█ There being no legal liability to pay such interest, no legal contract for its payment, the contract being void to the extent of the interest, the defense may be made as against a holder in due course. Perry Savings Bank v. Fitzgerald, 167 Iowa, 446, 149 N. W. 497; Sabine v. Paine, 223 N. Y. 401, 119 N. E. 849, 5 A. L. R. 1444; Hanover Nat. Bank v. Johnson, 90 Ala. 552, 8 So. 42; Whitehead et al. v. Coker, 16 Ala. App. 165, 76 So. 484.

█ The result is that complainants had a complete and adequate remedy at law, and the defendant's demurrers to the bill were due to be sustained.

The decree of the circuit court is therefore reversed, and the cause remanded.

. Reversed and remanded.

ANDERSON, C. J., and SAYRE and THOMAS, JJ., concur.